## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

ABRAHAM GRINBERGER,

          Plaintiff,

   v.

ZIX CORPORATION, MARK J.
BONNEY, MARCY CAMPBELL,
TAHER A. ELGAMAL, JAMES H.
GREENE, JR., ROBERT C.
HAUSMANN, MARIBESS L.
MILLER, BRANDON VAN BUREN,
and DAVID J. WAGNER,

          Defendants.

Case No.

**COMPLAINT FOR
VIOLATION OF THE
FEDERAL SECURITIES LAWS**

**JURY TRIAL DEMANDED**

Plaintiff Abraham Grinberger ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through hhis counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

### NATURE AND SUMMARY OF THE ACTION

1.    Plaintiff brings this action against Zix Corporation ("Zix" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC")

Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"), and to enjoin the expiration of a tender offer (the "Tender Offer") on a proposed transaction, pursuant to which Zix will be acquired by Open Text Corporation ("OpenText"), through OpenText's subsidiary Zeta Merger Sub Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On November 8, 2021, Zix issued a press release announcing that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") dated November 7, 2021, to sell Zix to OpenText.   Under the terms of the Merger Agreement, OpenText will acquire all of the outstanding shares of Zix for $8.50 per share in cash (the "Offer Price").   Pursuant to the Merger Agreement, Purchaser commenced the Tender Offer on November 22, 2021.   The Tender Offer is scheduled to expire at one minute after 11:59 p.m., Eastern Time, on December 20, 2021.  The Proposed Transaction is valued at approximately $860 million.

3.      On November 22, 2021, Zix filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC. The Recommendation Statement, which recommends that Zix stockholders tender their shares in the Tender Offer, omits or misrepresents material information concerning, among other things: (i) Zix management's financial projections, and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Citigroup Global Markets Inc. ("Citi"); (ii) the background of the Proposed Transaction; and (iii) Citi's potential

conflicts of interest.  Defendants authorized the issuance of the false and misleading Recommendation Statement in violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act.

4.     In short, the Proposed Transaction will unlawfully divest Zix's public stockholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company stockholders.  To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such problems are remedied.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable

conduct took place, where most of the documents are electronically stored, and where the evidence exists.  Zix operates and maintains offices in this District. Moreover, each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

<b>THE PARTIES</b>

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Zix.

9.     Defendant Zix is a Texas corporation, with its principal executive offices located at 2711 N. Haskell Avenue, Suite 2300, LB 36, Dallas, Texas 75204. Zix also maintains offices at 8178 Jackson Road, Suite A, Ann Arbor, Michigan 48103.  Zix is a leader in email security, productivity, and compliance.  Zix's common stock is traded on the Nasdaq Global Select Market under the ticker symbol "ZIXI."

10.     Defendant Mark J. Bonney ("Bonney") has been a director of the Company since January 2013.

11.     Defendant Marcy Campbell ("Campbell") has been a director of the Company since March 2020.

12.     Defendant Taher A. Elgamal ("Elgamal") has been a director of the Company since July 2011.

13.     Defendant James H. Greene, Jr. ("Greene") has been a director of the Company since February 2019.

14.      Defendant Robert C. Hausmann ("Hausmann") has been non-executive Chair of the Board since December 2014, and a director of the Company since November 2005.   Defendant Hausmann previously served as Lead Independent Director from December 2012 until December 2014.

15.     Defendant Maribess L. Miller ("Miller") has been a director of the Company since April 2010.

16.     Defendant Brandon Van Buren ("Van Buren") has been a director of the Company since February 2019.

17.     Defendant David J. Wagner ("Wagner") has been President, Chief Executive Officer ("CEO"), and a director of the Company since January 2016.

18.     Defendants identified in paragraphs 10-17 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

19.     OpenText is a Canadian corporation with its principal executive offices located in Ontario, Canada.   OpenText designs, develops, markets, and sells information management software and solutions.  It offers content services; business network that manages data within the organization and outside the firewall; security and protection solutions for defending against cyber threats, and preparing for

business continuity and response in the event of a breach; digital investigation and forensic security solutions; OpenText security solutions to address information cyber resilience needs; Carbonite and Webroot products; and OpenText Information Management software platform.  OpenText's common shares trade on the Nasdaq Global Select Market under the ticker symbol "OTEX."

20.    Merger Sub is a Texas corporation and a wholly owned subsidiary of OpenText.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

21.    Incorporated in 1998, Zix is a leading cloud provider of email security, productivity and compliance solutions.  Zix delivers easy-to-use solutions for email encryption, data loss prevention ("DLP"), advanced threat protection, unified archiving, and cloud data backup.  As a leading provider of cloud-based cybersecurity, compliance, and productivity solutions for businesses of all sizes, the Company is focused on the protection of business communication, enabling customers to better secure data and meet compliance needs.  Zix serves organizations in many industries, with particular emphasis on the healthcare (including multiple major hospitals and several Blue Cross Blue Shield plans), financial services (including several major U.S. Banks), and insurance and government (including the SEC) sectors.

22.    The Company's email encryption and DLP capabilities enable the secure exchange of email that includes sensitive information.    Through a comprehensive secure messaging service, called Email Encryption (formerly ZixEncrypt), Zix allows an enterprise to use policy-driven rules to determine which email messages should be sent securely or quarantined for review to comply with regulations or company-defined policies.

23.    On November 8, 2021, the Company announced its third quarter 2021 financial results and business highlights, including record net dollar retention of 103.1%.    Revenue for the Company increased 18% to $64.9 million.    Annual recurring revenue ("ARR") increased 18% to $262.8 million.    Cloud ARR increased 19% to $236.9 million or 90% of total ARR.    Adjusted EBITDA increased to $13.9 million, representing an adjusted EBITDA margin of 21.5%.    The Company ended the quarter with $39.0 million in cash, an increase of 15.0% or $5.1 million compared to the end of the prior quarter.    Zix also expanded its Global Partner Program in the United Kingdom and Germany, adding solutions and support services to further enhance partner growth and operating capabilities.    The Company added over 40,000 cloud mailboxes in Q3 2021.    Reflecting on the Company's results, defendant Wagner stated:

> We delivered strong financial results across the board in the third quarter, highlighted by 18% growth in revenue and ARR, along with solid EBITDA and cash flow generation.    The double-digit growth we achieved was driven by strong Zix IP attach rates as well as increasing

sales synergies we are realizing across our organization, which produced a record of over 103% net dollar revenue retention rate in Q3. This achievement is a direct reflection of Zix's successful transformation into a cloud-first organization and underscores the success we are having retaining customers, adding customers onto Secure Cloud, and selling CloudAlly backup into our base. CloudAlly continues to perform exceptionally well, with a record number of transacting partners coming online in Q3, helping produce 20% sequential growth and 74% year-over-year growth in this segment.

**The Proposed Transaction**

24.    On November 8, 2021, Zix issued a press release announcing the

Proposed Transaction.  The press release states, in relevant part:

> DALLAS--Nov. 8, 2021-- Zix Corporation (NASDAQ: ZIXI) ("Zix"), a leading provider of cloud email security, threat protection and compliance cloud solutions for Small and Medium-sized Businesses (SMBs), today announced that it has entered into a definitive agreement to be acquired by OpenText™, a market-leading provider of Information Management solutions, for $8.50 per share in cash, representing an enterprise value of $860 million.
>
> "We are pleased to announce this transaction with OpenText," said Robert Hausmann, Chairman of Zix.  "Following a strategic review conducted by our Board of the Directors (the "Board"), triggered in part by unsolicited approaches from multiple parties, Zix and its financial advisor conducted a broad outreach to more than 70 strategic and financial parties over a number of months.  Today's announcement is the culmination of that process.  This transaction, which has been unanimously approved by the Zix Board, delivers to Zix's stockholders liquidity, value certainty and a high likelihood and speed to closing with a proven acquiror."
>
> Dave Wagner, Zix's Chief Executive Officer, added, "Over the past several years, Zix has expanded its product portfolio and customer base through acquisitions and organic initiatives.  We are thrilled to join forces with OpenText and add Zix's Secure Cloud Platform to the Carbonite and Webroot products in OpenText's SMB Platform.

OpenText provides the ideal opportunity to help Zix achieve its next phase of growth.  This transaction will bring greater resources and product capabilities, and provide significant benefits to our customers, partners and employees."

Under the terms of the agreement, an OpenText subsidiary will commence a tender offer for all outstanding shares of Zix common stock at a price of $8.50 per share in cash, representing a premium of 16% to the volume-weighted average closing price of Zix common stock for the 20 trading days prior to October 18, 2021, when news reports appeared regarding a potential transaction.

Closing is subject to the tender of two-thirds of Zix's common shares outstanding as well as customary regulatory approvals and other customary conditions, and the transaction is expected to close within 90 days of this announcement.  Zix's largest shareholder, an affiliate of True Wind Capital, L.P., has agreed, subject to satisfaction of certain conditions, to convert its Series A Preferred Shares into common shares and to tender those shares in the tender offer.  Zix's executive officers and certain directors have likewise agreed to tender their common shares in the tender offer.

**Advisors**

Citi is acting as exclusive financial advisor to Zix, and Baker Botts is acting as legal counsel.

## Insiders' Interests in the Proposed Transaction

25.    Zix insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Zix.

26.    Notably, Zix insiders stand to reap substantial financial benefits for

securing the deal with OpenText. The following table sets forth the cash payments the Company's executive officers and directors will receive in connection with tendering their shares in the Tender Offer:

| Name | Number of Shares Beneficially Owned (#) | Cash Consideration Payable in Respect of Shares ($) |
| --- | --- | --- |
| David J. Wagner | 537,278 | 4,566,863 |
| David E. Rockvam | 238,840 | 2,030,140 |
| Ryan L. Allphin | 25,000 | 212,500 |
| John P. Di Leo | 88,898 | 755,633 |
| Noah F. Webster | 91,948 | 781,558 |
| Robert C. Hausmann | 108,048 | 918,408 |
| Mark J. Bonney | 61,696 | 524,416 |
| Maryclaire Campbell | 39,099 | 332,342 |
| Taher A. Elgamal | 50,098 | 425,833 |
| James H. Greene, Jr.(1) | 20,699,837(2)(3) | 175,948,615 |
| Maribess L. Miller | 104,014 | 884,119 |
| Brandon Van Buren(4) | — | — |
| All of Zix's current directors and executive officers as a group (12 persons) | 22,044,756 | 187,380,426 |

27.     Moreover, upon consummation of the Proposed Transaction, all vested and unvested Company options, restricted shares, performance shares, restricted stock units ("RSUs"), and performance-based restricted stock units ("PSUs") will be converted into the right to receive cash payments. The following tables set forth the payments that Zix insiders will receive in connection with their Company equity awards upon consummation of the merger:

| Name of Executive Officer or Director | Number of Shares subject Company Options (#) | Cash Consideration for Company Options ($) |
|---|---|---|
| David J. Wagner | 200,000 | 978,000 |
| Ryan L. Allphin | 100,000 | 180,000 |
| John P. Di Leo | 100,000 | 47,000 |
| David E. Rockvam | 100,000 | 456,000 |
| Noah F. Webster | — | — |
| Mark J. Bonney | 78,894 | 382,785 |
| Maryclaire Campbell | — | — |
| Taher A. Elgamal | 27,708 | 118,887 |
| Robert C. Hausmann | — | — |
| Maribess L. Miller | 15,408 | 75,345 |

| Name of Executive Officer or Director | Number of Shares subject to RSUs / Restricted Shares (#) | Cash Consideration for RSUs / Restricted Shares ($) |
|---|---|---|
| David J. Wagner | 351,657 | 2,989,085 |
| Ryan L. Allphin | 147,475 | 1,253,538 |
| John P. Di Leo | 115,472 | 981,512 |
| David E. Rockvam | 167,688 | 1,425,348 |
| Noah F. Webster | 94,258 | 801,193 |
| Mark J. Bonney | 8,221 | 69,879 |
| Maryclaire Campbell | 9,083 | 77,206 |
| Taher A. Elgamal | 6,738 | 57,273 |
| Robert C. Hausmann | 6,873 | 58,421 |
| Maribess L. Miller | 9,029 | 76,747 |

| Name of Executive Officer or Director | Number of Shares subject to PSUs/Performance Shares (#) | Cash Consideration for PSUs/Performance Shares ($) |
|---|---|---|
| David J. Wagner | 553,428 | 4,704,138 |
| Ryan L. Allphin | 158,713 | 1,349,061 |
| John P. Di Leo | 231,542 | 1,968,107 |
| David E. Rockvam | 334,506 | 2,843,301 |
| Noah F. Webster | 148,392 | 1,261,332 |

28.    Further, if they are terminated in connection with the Proposed Transaction, Zix's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name (1) | Cash ($) (2) | Equity ($) (3) | Pension/ NQDC ($) (4) | Perquisites/ Benefits ($) (5) | Tax Reimbursement ($) (6) | Total ($) |
|---|---|---|---|---|---|---|
| David J. Wagner | 820,000 | 7,693,223 | n/a | 30,000 | n/a | 8,543,223 |
| Ryan L. Allphin | 502,515 | 2,737,599 | n/a | 30,000 | n/a | 3,270,114 |
| John P. Di Leo | 750,025 | 2,976,057 | n/a | 30,000 | n/a | 3,756,082 |
| David E. Rockvam | 603,737 | 4,268,649 | n/a | 30,000 | n/a | 4,902,386 |
| David J. Robertson | 431,983 | 1,945,650 | n/a | 30,000 | n/a | 2,407,633 |
| Noah F. Webster | 411,472 | 2,062,525 | n/a | 30,000 | n/a | 2,504,267 |

## The Recommendation Statement Contains Material Misstatements or Omissions

29.     The defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to Zix's stockholders. The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to tender their shares in the Tender Offer or seek appraisal.

30.     Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Zix management's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Citi; (ii) the background of the Proposed Transaction; and (iii) Citi's potential conflicts of interest.

### Material Omissions Concerning the Company's Financial Projections and Citi's Financial Analyses

31.     The Recommendation Statement omits material information regarding Company management's financial projections.

32.     The Recommendation Statement sets forth that "During the month of June, Company's management team worked with representatives of Citi to prepare and finalize materials containing non-public information that would be suitable for submission to potential acquiror candidates under non-disclosure agreements, as well as projections concerning the Company's expected future financial performance."   Recommendation Statement at 21.   Yet, the Recommendation Statement fails to disclose the projections Company management prepared in June 2021.

33.     The Recommendation Statement also fails to disclose all line items underlying the Company's: (i) Adjusted Gross Profit; (ii) Adjusted EBITDA; and (iii) Unlevered Free Cash Flow.

34.     The Recommendation Statement also fails to disclose material information concerning Citi's financial analyses.

35.     The Recommendation Statement describes Citi's fairness opinion and the various valuation analyses performed in support of its opinion.   However, the description of Citi's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.   Without this information, as described below, Zix's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Citi's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

36.   With respect to Citi's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) quantification of the range of terminal values of Zix; (ii) quantification of the inputs and assumptions underlying the discount rates of 11.0% to 13.2%; (iii) the value of Zix's net operating losses; (iv) Zix's net debt as of September 30, 2021; and (v) the number of outstanding shares of Zix used in the analysis.

37.   With respect to Citi's *Selected Public Companies Analysis* and *Selected Precedent Transaction Analysis*, the Recommendation Statement fails to disclose the individual multiples and financial metrics for each of the companies and transactions analyzed, respectively.

38.   With respect to Citi's *Sum-of-the-Parts Valuation* analysis, the Recommendation Statement fails to disclose: (i) Zix's forecasted 2022 revenue for the IP Business; and (ii) Zix's forecasted 2022 gross profit for the MSFT Business.

39.   With respect to Citi's *Discounted Analyst Price Targets* analysis, the Recommendation Statement fails to disclose: (i) the individual price targets observed; (ii) the sources thereof; and (iii) quantification of the inputs and assumptions underlying the discount rate of 12.5%.

40.   The omission of this information renders the statements in the "Certain Financial Projections" and "Opinion of Zix's Financial Advisor" sections of the

Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

41.    The Recommendation Statement fails to disclose material information concerning the background of the Proposed Transaction.

42.    For example, the Recommendation Statement fails to disclose whether the non-disclosure agreements including standstill provisions that Zix entered into with potential counterparties identified in the Recommendation Statement as Parties A, B, C, D, and E, and any other parties during the sale process, include "don't-ask, don't-waive" standstill provisions that are presently precluding these potential counterparties from submitting a topping bid for the Company.

43.    The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a non-disclosure agreement could make a superior proposal for the Company.  If the potential acquirer's non-disclosure agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (a) breaching the confidentiality agreement—since in order to make the superior proposal, it would have to ask for a waiver, either directly or indirectly; or by (b) being released from the agreement, which if the action has been done, is omitted from the Recommendation Statement.

44.    The disclosure of the terms of these non-disclosure agreements is crucial to Zix stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

45.    The omission of this information renders the statements in the "Background of the Offer and the Merger" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Citi's Potential Conflicts of Interest***

46.    The Recommendation Statement fails to disclose material information concerning the potential conflicts of interest faced by Citi.

47.    For example, the Recommendation Statement sets forth that:

> Citi and its affiliates in the past have provided services to OpenText, and in the future may provide services to Zix and OpenText unrelated to the proposed Transactions, for which services Citi and such affiliates have received compensation and expect to receive compensation, including, without limitation, during the two year period prior to the date hereof, (i) having acted for OpenText in February 2020 as joint lead manager in connection with the issuance of $900,000,000 3.875% Senior Unsecured Notes due 2028 and $900,000,000 4.125% Senior Unsecured Notes due 2030 and (ii) having acted for OpenText in October 2019 as joint lead arranger and joint book runner in connection with its $750,000,000 Fourth Amended and Restated Credit Agreement.

Recommendation Statement at 37.  The Recommendation Statement, however, fails to disclose the amount of compensation Citi has received for providing services to OpenText in the two years prior to its fairness opinion.

48.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

49.     The omission of this information renders the statements in the "Opinion of Zix's Financial Advisor" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

50.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement.   Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other Zix stockholders will be unable to make an informed decision whether to tender their shares in the Tender Offer or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations
of Section 14(d) of the Exchange Act and SEC Rule 14d-9**

51.     Plaintiff repeats all previous allegations as if set forth in full.

52.     Defendants have caused the Recommendation Statement to be issued with the intention of soliciting Zix stockholders to tender their shares in the Tender Offer.

53.    Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

54.    The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

55.    Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

56.    The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the other stockholders of Zix, who will be deprived of their right to make an informed decision whether to tender their shares or seek appraisal if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

57.     Plaintiff repeats all previous allegations as if set forth in full.

58.     Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Tender Offer.

59.     Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer or seek appraisal.

60.     As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares or seek appraisal.

## COUNT III

**Claims Against the Individual Defendants for
Violation of Section 20(a) of the Exchange Act**

61.     Plaintiff repeats all previous allegations as if set forth in full.

62.     The Individual Defendants acted as controlling persons of Zix within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Zix and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

63.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

65.    In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.   The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

66.    By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

67.    Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Zix, and against defendants, as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  December 2, 2021                           **WEISSLAW LLP**

By  /**s**/ Richard A. Acocelli
    Richard A. Acocelli
    305 Broadway, 7th Floor
    New York, New York 10007
    Tel: (212) 682-3025
    Fax: (212) 682-3010
    Email: racocelli@weisslawllp.com

    *Attorneys for Plaintiff*